UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERMAN CRUZ, | |
| Plaintiff, | |
| -against- | |
| W. LEE, *et. al,* | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/15/2016

14 cv 4870 (NSR)(JCM)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Herman Cruz ("Plaintiff") brings this action against defendants Superintendent Lee, Sergeant Valerdo, Sergeant Malark, Kiernan, and Jackson (collectively, "Defendants") for denying him protective custody status, in violation of his right to access the courts and to petition the government for the redress of grievances under the First Amendment and to be free from cruel and unusual punishment under the Eighth Amendment. Plaintiff alleges that he was the subject of improper retaliation by prison staff and personnel. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the § 1983 Complaint ("Compl." ECF No. 1) filed by Plaintiff and all relevant attached materials.[1]

---

[1] As a *pro se* Plaintiff, Cruz is subject to a more liberal pleading standard, which requires that the Court consider factual allegations in Cruz's opposition papers to supplement allegations in his Complaint. *See Collins v. Goord,* 438 F.Supp.2d 399, 403 n. 1 (S.D.N.Y. 2006); *Fox v. Fischer,* No. 04 Civ. 6718, 2005 WL 1423580, at *2 n. 1 (S.D.N.Y. June 14, 2005); *Verley v. Goord,* No. 02 Civ. 1182, 2004 WL 526740, at *5 (S.D.N.Y. Jan. 23, 2004). Therefore, the Court will consider facts alleged in the Complaint and opposition papers as long as there is no disagreement between the documents.

Copies mailed/faxed 3/15/2016

Chambers of Nelson S. Román, U.S.D.J.

On June 20, 2014, Plaintiff filed this action against Defendants. Defendant Kiernan worked in Green Haven Correctional Facility's ("GHCF") Mental Health Services Department as a member of the staff, and Defendant Jackson worked as a Counselor in GHCF.

On May 1, 2014, Plaintiff was transferred from Upstate Correctional Facility to GHCF. (Compl. at 3.)[2] At that time, Plaintiff requested protection from defendants Kiernan and Valerdo, and provided them with "enemy names." (*Id.*) Plaintiff made it known to defendants Kiernan and Valerdo that he had previously brought lawsuits against non-defendant employees of the Department of Corrections and Community Supervision ("DOCCS") for failing to place him into protective custody. (*Id.*) Plaintiff told defendants Kiernan and Valerdo about the *Cruz v. Hillman* case, in which Plaintiff brought claims against non-defendants Sergeant James Hillman and Corrections Counselor Eddie Lee for "colluding to deny him protective custody status at [GHCF], even though he had previously informed Defendants that he needed protection because his life was in danger." (*Id.*) *See Cruz v. Hillman*, No. 01 CIV.4169 (DAB) (DF), 2002 U.S. Dist. LEXIS 17705 (S.D.N.Y. May 16, 2002). Plaintiff also told defendants Kiernan and Valerdo about the *Cruz v. Grosso* case, in which Plaintiff brought claims against non-defendant M. Grosso, an employee of Auburn Correctional Facility, for failing to protect him, filing a false misbehavior report, and subjecting him to unconstitutional conditions of confinement. (Compl. at 3.) *See Cruz v. Grosso*, No. 913 CV 30 (FJS) (TWD), 2015 WL 4542280 (N.D.N.Y. July 27, 2015).

As to the current Complaint, Plaintiff states that defendants Kiernan and Valerdo, in retaliation for him filing the aforementioned lawsuits, failed to forward to their superiors the list of "enemies" the Plaintiff provided. (Compl. at 3.) In support of this, Plaintiff states that Kiernan told him "don't expect any assistance from us because of the case against Grosso." (*Id.*) Plaintiff

---

[2] Page number references in the Complaint refer to ECF page numbers to avoid confusion.

attempted to file a grievance regarding the incident involving defendants Kiernan and Valerdo concerning "the fact that security continues to deny me protection after I provided names of enemies." (*Id.* at 4.) However, the Grievance Clerk could not locate Plaintiff's grievance and stated that the "staff goes through [the grievances] first." (*Id.*) Plaintiff then attempted to "appeal" by speaking to his mental health doctor and guidance counselor and by writing a letter to Superintendent Lee and providing him a copy of the *Hillman* case. (*Id.*)

Following his failed attempts to resolve his issues, while Plaintiff was at the general library, he was assaulted and threatened by defendant Sergeant Malark, in retaliation for his writing a letter to Superintendent Lee. (*Id.* at 3.) Sergeant Malark and two John Doe officers came to the general library to transport Plaintiff to the Special Housing Unit ("SHU"). (*Id.*) Once in the hallway, Sergeant Malark "slammed Plaintiff against the wall" and "punched Plaintiff in the back." (*Id.*) Sergeant Malark threatened the Plaintiff, stating "you better not call witnesses or say anything to the Nurse" and advised him that he would not be receiving protection. (*Id.*) Finally, Plaintiff was issued a misbehavior report by Sergeant Malark and was placed in SHU. (*Id.* at 3, 5.)

After Sergeant Malark issued Plaintiff a misbehavior report, Plaintiff asked his counselor, Defendant Jackson, for assistance with regard to a disciplinary hearing and provided her with a copy of the *Hillman* case. (*Id.* at 3.) Defendant Jackson refused to assist the Plaintiff and stated, as her reason why, "we have a code." (*Id.*)

In sum, the Plaintiff claims that he was (1) denied placement into protective custody; (2) assaulted by Sergeant Malark; (3) given a false misbehavior report by Sergeant Malark; and (4) denied any assistance in preparing for a disciplinary hearing from Defendant Jackson (in connection with the misbehavior report he had received).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a 12(b)(6) motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). They are construed "liberally" and interpreted "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Additionally, this Court "may consider factual allegations made by a *pro se* plaintiff in opposition papers and

other additional materials." *Baskerville v. Blot*, 224 F. Supp. 2d 723 (S.D.N.Y. 2002). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuch*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09 CIV. 9199 PGG, 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)) (internal quotation marks and citations omitted). "[B]ecause 'it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion [,] ... [t]he exhaustion inquiry ... requires that [the court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*,

5

491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007). *See also Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004). The defendants bear the burden of demonstrating that Plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). Where a prisoner has failed to exhaust some, but not all, of the claims included in the complaint, the PLRA does not require dismissal of the entire complaint. *Tafari v. Hues*, 539 F. Supp. 2d 694, 697 (S.D.N.Y. 2008) (citing *Jones,* 549 U.S. at 219-24). Instead, the court dismisses the unexhausted claims and proceeds to adjudicate the exhausted claims. *Jones*, 549 U.S. at 224.

A person detained or incarcerated at a DOCCS facility must exhaust all of the steps of the DOC Inmate Grievance Resolution Program ("IGRP"). *See Robinson v. Henschel*, No. 10 Civ. 6212 (PGG), 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) ("the PLRA requires complete exhaustion in accordance with the administrative procedures within [DOCCS]") (internal quotation marks and citations omitted). The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGRC, (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *See Espinal*, 558 F.3d at 125 (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7 (1999)).

The Second Circuit has recognized three situations in which a Plaintiff is not required to satisfy the PLRA exhaustion requirement. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). *See also Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012), *aff'd*, 2013 WL 3214625 (2d Cir. 2013). The failure to exhaust administrative remedies may be excused or Plaintiff's claim may be deemed exhausted: (1) when administrative remedies are not available to the prisoner, (2) when the defendants waive the defense by failing to raise or preserve it, or

acted in such a manner that they are estopped from raising it, or (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement. *Hemphill*, 380 F.3d at 686.

With regard to situation (1), to be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of." *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). When Plaintiff lacks available remedies, the PLRA's exhaustion requirement is inapplicable. *Hemphill*, 380 F.3d at 686. In some circumstances, a defendant's behavior will render an administrative remedy unavailable. *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031 at *6 (S.D.N.Y. Oct. 31, 2006) (citing *Hemphill*, 380 F.3d at 687). For example, the exhaustion requirement is waived "in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies." *Abney*, 380 F.3d at 667 (citation omitted). *See also Hemphill*, 380 F.3d at 688-89 (determining that threats from guards which prevent the filing of a grievance would make the remedy unavailable) (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)); *Santiago v. Westchester Cty.*, No. 13 CIV. 1886 (LGS), 2014 WL 2048201, at *3 (S.D.N.Y. May 19, 2014) (holding that a factual inquiry is required where the Complaint has sufficiently alleged that if Plaintiff failed to exhaust administrative remedies, the failure resulted because administrative remedies may not have been "available" to him).

With regards to estoppel—situation (2)—a prisoner may be excused from exhausting his administrative remedies when "defendants took affirmative action to prevent him from availing himself of grievance procedures." *Amador*, 655 F.3d at 103 (citing *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006)). Such "affirmative action" includes "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements,

and transfers." *Id*. (internal citations omitted). *See also Ziemba*, 366 F.3d at 162-63 (estopping defendants where they had prevented exhaustion of remedies by beating and threatening the inmate, denying him grievance forms, and transferring him to another prison).

Finally, in situation (3), the Court must consider any special circumstances that may have frustrated an inmate's grievance. *Hemphill*, 380 F.3d at 686. Generally, when procedural requirements are not clear, are misleading, or are so trivial as to make exhaustion an ordeal, a prisoner's failure to comply may not be fatal to his claims. *See generally Giano*, 380 F.3d at 676; *Hemphill*, 380 F.3d at 689-90 (2d Cir. 2004). For example, in *Giano*, the Second Circuit determined that "there are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano*, 380 F.3d at 676 (citing *Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004)). The court in *Giano* held that plaintiff's reasonable interpretation of DOCCS' regulations constituted the "special circumstances" justifying his failure to exhaust. *Giano*, 380 F.3d at 676. Specifically, the inmate took a disciplinary appeal when, under a correct interpretation of the rules, he should have filed a grievance. *Id*. The court excused his failure, holding that prison rules "do not differentiate clearly" and that therefore the inmate was excused from precise compliance. *Id*. at 679.

As an initial matter, it is clear from the face of the Complaint that Plaintiff has not exhausted claims 2-4: that he was assaulted, given a false behavior report, and denied assistance at his disciplinary hearing. Plaintiff has not alleged that he filed a grievance or even that he attempted to file a grievance with regards to any of these claims. Therefore, these claims must be dismissed for Plaintiff's failure to exhaust his administrative remedies.

However, with regards to claim 1—that Plaintiff was not placed into protective custody—Plaintiff asserts that he filed a grievance and made efforts to appeal to the superintendent. Thus, it is not apparent on the face of the Complaint that Plaintiff failed to exhaust his administrative remedies with regard to his retaliation and denial of protection claim. (*See* Compl., at 5.) Although Plaintiff did not complete the IGRP three-step grievance procedure, and thus did not technically exhaust his administrative remedies, Plaintiff may be excused from fully complying with the PLRA requirement of exhaustion because (1) remedies may have been unavailable to him, and (2) Defendants may be estopped from asserting the exhaustion defense. *See Hemphill*, 380 F.3d at 686. *See also Amador*, 655 F.3d at 102.

Administrative remedies may not have been available to the Plaintiff because Plaintiff was unable to file a grievance. Though Plaintiff attempted to file a grievance with regards to his retaliation claim that he was not placed into protective custody, the grievance was never entered into the IGRP system. (Compl. at 5.) When Plaintiff inquired about his grievance, the Grievance Clerk stated that it "could not be located." (*Id.*) Plaintiff then attempted to "appeal" by writing to a Counselor, speaking to a Mental Health Doctor, and writing to Superintendent Lee, because, in his opinion, these were the only administrative remedies available to him. (*Id.* at 3.) *See also Hale v. Rao*, 768 F. Supp. 2d 367 (N.D.N.Y. 2011) (holding that a plaintiff's failure to exhaust his administrative remedies will be excused when a member of prison staff throws out a grievance and threatens to assault a plaintiff if he attempts to utilize the grievance process). Accepting all allegations as true, it is clear that Plaintiff attempted to grieve his protective custody claim. When Plaintiff reasonably believed that his grievances were not being filed, he tried to grieve his complaints by writing letters of appeal. Further, in light of the fact that Plaintiff has filed numerous grievances in the past, he is clearly familiar with the grievance

process and aware of the steps he must take before availing himself of the Court's remedies. Therefore, the administrative grievance process may have been unavailable to Plaintiff, and the Court cannot dismiss his retaliation/denial of protection claim for failure to exhaust.

Additionally, Defendants may be estopped from asserting a non-exhaustion defense because their conduct—refusing to file Plaintiff's grievance that was of a serious nature—may have prevented the Plaintiff from exhausting all remedies. *See Ziemba*, 366 F.3d at 162-63 (estopping defendants from raising failure-to-exhaust-defense where they had prevented exhaustion of remedies by beating and threatening the inmate, denying him grievance forms, and transferring him to another prison). Plaintiff alleges not only that the Grievance Clerk refused to file or intentionally misplaced his grievance but also that Defendants assaulted him because he attempted to file a grievance. Therefore, assuming that Plaintiff's allegations are true—as the Court must at this stage of the litigation—Defendants may be estopped from asserting a non-exhaustion defense pursuant to the second *Hemphill* exception. *Hemphill,* 380 F.3d at 686*; Samuels v. Fischer, et. al*., No. 13-CV-8287 (KMK), 2016 WL 827781, at *19 (S.D.N.Y. Mar. 2, 2016) (holding that it would be premature to dismiss Plaintiff's claims for failure to exhaust his administrative remedies where Plaintiff's non-exhaustion is not clear from the face of the Amended Complaint and where Plaintiff argued that his "failed attempt to file a second grievance can be attributed to [defendants refusing] to provide [P]laintiff with ... grievance forms."). *See also McClinton v. Connolly*, No. 13-CV-2375 (KMW) (DCF), 2014 WL 5020593, at *3 (S.D.N.Y. Oct. 8, 2014) (defendants may be estopped where Plaintiff  claimed that the "Inmate Grievance Coordinator refused to file [his] grievance of improper medical care"); *Rivera v. Pataki*, No. 04–CV–1286, 2005 WL 407710, at *10-11 (S.D.N.Y. Feb. 7, 2005) (citing

*Hemphill*, 380 F.3d at 688-89) (holding that defendants were estopped from asserting their non-exhaustion defense because defendants refused to allow plaintiff to file his grievance).

Therefore, Plaintiff's claim of retaliation and denial of protection cannot be dismissed at this stage of the litigation, as he may be excused from exhausting his administrative remedies with regards to this claim.

## II. Personal Involvement—Defendant Lee

Defendants assert that Plaintiff's claim against Defendant Lee should be dismissed because Plaintiff failed to allege Defendant Lee was personally involved in the alleged wrongdoing. Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977). A supervisory defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 if he or she: (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation, including where he or she directly participated in the infraction and where, after learning of the violation, failed to remedy the wrong. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (internal citations omitted). *See also Morgan v. Ward*, No. 14 Civ. 7921, 2016 WL 427913, at *6 (S.D.N.Y. Feb. 2, 2016) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 266

(S.D.N.Y. 2014); *Ramey v. Perez*, No. 13 Civ. 17, 2014 WL 407097, at *4 (S.D.N.Y. Jan. 31, 2014).

In the instant case, Plaintiff alleges that he wrote a letter of "appeal" to Superintendent Lee regarding the retaliatory failure to place him into protected custody and enclosed a copy of the *Hillman* case. (*See* Compl. at 3-4.) Plaintiff states that Superintendent Lee did not inquire about whether the Plaintiff had problems, but rather merely directed the staff "to write him up and take him to SHU." (*See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 40, at 9.) Construing Plaintiff's *pro se* complaint liberally, as we must, Plaintiff sufficiently alleges that Superintendent Lee, after learning of a violation through Plaintiff's letter of appeal, failed to remedy the wrong. *See United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975) (holding the New York State Corrections Commissioner liable for money damages along with the prison warden when the former was "chargeable with knowledge" of the cruel and unusual punishment of one prisoner).

The Defendants argue that "the mere receipt of a letter is not sufficient to establish the personal liability of a supervisor under *Sealy v. Giltner*, 116 F.3d 47, 51 (2d Cir. 2007) and *Lloyd*, 43 F. Supp. 3d at 268. In *Sealy*, the Court held that the plaintiff did not produce sufficient evidence of personal involvement to survive a motion for summary judgment where the plaintiff wrote a letter of appeal to the commissioner, and the commissioner referred the appeal letter to a subordinate for determination. *Sealey*, 116 F.3d at 51. Similarly, in *Lloyd*, the supervisory defendant received the letter and forwarded it to "the appropriate unit for investigation." *Lloyd*, 43 F. Supp. 3d at 268. As the *Lloyd* court explained, "[c]ourts have consistently held that, if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject

matter of the letter." *Id.* (collecting cases) (internal quotation marks omitted). In the instant case, Plaintiff alleges that he wrote a letter of appeal to Defendant Lee and that he received no response. There is no indication from Plaintiff's allegations that Defendant Lee took any steps to resolve the issue. Therefore, Plaintiff sufficiently alleges personal involvement of Defendant Lee at this stage of the litigation, and his claim for retaliatory failure to place Plaintiff into protective custody against Defendant Lee cannot be dismissed.

## III. First Amendment Retaliation

In order to sustain a First Amendment retaliation claim under Section 1983, a prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal*, 558 F.3d at 128 (2d Cir. 2009) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Plaintiff clearly engaged in constitutionally protected conduct, as filing and prosecuting a federal lawsuit is a constitutionally protected activity. *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

Plaintiff alleges that, in retaliation for filing these lawsuits (i.e. the protected activity), Defendants refused to place him into protective custody after Plaintiff provided them with the names of his enemies. In order to adequately plead an "adverse action," Plaintiff must allege that he was subject to "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill*, 389 F.3d at 381 (internal citations omitted). The Second Circuit has explained that fear is a key aspect in whether an inmate has suffered adverse action, specifically when fear is used as a means to stifle a prisoner's

ability or desire to file lawsuits or grievances. *See Morales v. Mackalm,* 278 F.3d 126, 131-32

(2d Cir. 2002) (reversing the dismissal of a complaint alleging that the transfer of prisoner to a

psychiatric facility was an adverse action taken in retaliation for filing a grievance). Plaintiff

alleges that Defendants' denial of protective custody, or even the denial of the submission of an

accurate protective custody application, constitutes an adverse action because Plaintiff feared for

his safety without custodial protection. (*See* Compl. at 6 ("I could be killed").) It cannot be said,

as a matter of law, that this fear would not deter a similarly situated individual from filing further

lawsuits or grievances. Therefore, Plaintiff has sufficiently alleged an adverse action.

Defendants dispute whether Plaintiff has alleged a causal connection between the

lawsuits and Defendants' denial of protective custody. "Proof of causal connection can be

established indirectly by showing that the protected activity was followed closely by

discriminatory treatment ... or through other evidence such as disparate treatment of fellow

employees who engaged in similar conduct, or directly through evidence of retaliatory animus

directed against a plaintiff by the defendant." *DeCintio v. Westchester County Med. Ctr.*, 821

F.2d 111, 116 (2d Cir. 1987) (internal citations omitted). However, as the Second Circuit

recently explained:

> [P]risoner retaliation claims are easily fabricated, and ... pose a
> substantial risk of unwarranted judicial intrusion into matters of
> general prison administration. Accordingly, while we have held
> that temporal proximity between protected conduct and an adverse
> action constitutes circumstantial evidence of retaliation, we have
> consistently required some further evidence of retaliatory animus
> before permitting a prisoner to proceed to trial on a retaliation
> claim.

*Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (internal citations and quotation marks

omitted). With regards to temporal proximity, the Second Circuit "has not drawn a bright line to

define the outer limits beyond which a temporal relationship is too attenuated to establish a

causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001). *Compare Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's complaint, was in response to the plaintiff's protected activity) *with Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (finding that the lapse of eight months between a complaint and retaliatory act indicated a causal connection).

In the present case, Plaintiff's earlier federal lawsuits were filed in 2002 and 2013, and the alleged adverse action occurred in May of 2014. As to the first federal lawsuit—*Cruz v. Hillman*, filed on September 19, 2000 and decided on May 16, 2002—a time period of 12-14 years between the protected activity and retaliation (the present complaint was filed May 1, 2014) is too lengthy and thus the temporal relationship here is too attenuated to establish a causal connection. *See Cruz v. Hillman,* 2002 U.S. Dist. LEXIS 17705. *See also Shaw v. McDonald*, No. 14 CV 5856 (NSR), 2015 WL 8484570, at *6 (S.D.N.Y. Dec. 8, 2015) *reconsideration denied*, No. 14-CV-5856 (NSR), 2016 WL 828131 (S.D.N.Y. Feb. 22, 2016) ("[w]ithout any alleged explanation for the delay, a one year gap is too attenuated to establish a causal relationship.). With regards to the second lawsuit, however, Plaintiff has adequately alleged a causal connection. *Cruz v. Grosso* was filed on January 9, 2013 and decided on July 27, 2015. *See Cruz v. Grosso*, 2015 WL 4542280. The *Grosso* case was pending—and the protected activity was therefore ongoing—when the alleged adverse action occurred. Defendants argue that no causal connection exists because *Grosso* did not involve any of the Defendants here or even any of the staff at GHCF. While this may be factually true, Plaintiff has also alleged that (1) he notified Defendants of the *Grosso* case, (2) Defendant Kiernan stated that Plaintiff would not get

protective custody "because of the case against Grosso," and (3) Defendant Jackson refused to help Plaintiff and stated as her reason, "we have a code." (Compl. at 3-4.) Therefore, the close temporal proximity taken together with Defendants' knowledge of the protected activity and statements tending to demonstrate a retaliatory motive sufficiently establish a causal connection. Therefore, the Court declines to dismiss Plaintiff's First Amendment Retaliation Claim.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion is denied with respect to Plaintiff's retaliation claim—that Defendants denied him protective custody in retaliation for his filing of federal lawsuits. Plaintiff's remaining claims, however, are dismissed. Defendant shall have until 60 days from the date of this Order to file responsive pleadings on the remaining claim. An initial in-person case management and scheduling conference pursuant to Fed. R. Civ. P. 16 is scheduled for May 20, 2016, at 10:30 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. Plaintiff shall appear via telephone. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 36.

Dated:   March /5, 2016                                          SO ORDERED:
         White Plains, New York

                                                    _____
                                                        NELSON S. ROMÁN
                                                    United States District Judge

16